IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


KENNETH E. COEN,

        Plaintiff,

v.                        CIVIL ACTION NO. 1:11CV45
                                (Judge Keeley)


COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.


ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

      Pursuant to 28 U.S.C. §636(b)(1)(B), Fed. R. Civ. P. 72(b), and L.R. Civ. P. 4.01(d), the Court referred this Social Security action to United States Magistrate John S. Kaull, on April 6, 2011, with directions to submit proposed findings of fact and a recommendation for disposition.

      On December 30, 2011, Magistrate Judge Kaull filed his Report and Recommendation ("R&R") (Dkt. No. 18), which directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections with the Clerk of Court within fourteen (14) days after being served with a copy of the R&R. On January 9, 2012 the defendant, by counsel, filed objections to the R&R (Dkt. No. 19). On January 11, 2012, the plaintiff, Kenneth E. Coen ("Coen)," by counsel, also objected to the R&R (Dkt. No. 20).

COEN V. COMMISSIONER OF SOCIAL SECURITY                  1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

## I.   PROCEDURAL BACKGROUND

In April 2007, Coen filed an application for Social Security Income ("SSI"), alleging disability since January 2, 2007, due to lower back injury and hepatitis C (R. 19-28, 129, 157, 161). The Commissioner denied his application initially and upon reconsideration (R. 87-88, 99-102). Following a timely request for a hearing, an Administrative Law Judge ("ALJ") conducted a hearing on March 3, 2009, at which Coen, represented by counsel, appeared and testified. An impartial Vocational Expert ("VE") also testified (R. 33-84). On May 29, 2009, the ALJ determined that, because Coen retained the ability to perform a limited range of light and sedentary jobs that are available in the national and local economies, he was not disabled (R. 19-28). On February 11, 2011, the Appeals Council denied Coen's request for review and the ALJ's decision became the final decision of the Commissioner (R. 1-7). On April 6, 2011, Coen filed this action seeking review of the final decision (Dkt. No. 1).

## II.   PLAINTIFF'S BACKGROUND

At the time of the administrative hearing, Coen was forty-eight (48) years old(R. 27). His employment history includes general carpentry work, "concrete work and . . . layout work" (R.

2

**COEN V. COMMISSIONER OF SOCIAL SECURITY**                    1:11CV45

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

162).  He worked until 2005 when he reports he was "laid . . . off"
(R. 161).  He has a twelfth-grade education (R. 37).

### III.   ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520, the ALJ made the following findings:

1.  Coen has not engaged in substantial, gainful activity since April 10, 2007, the application date (20 CFR 416.971 *et seq.*) (R. 21);

2.  Coen has had the following medically determinable impairments, since April 10, 2007: degenerative disc disease, hepatitis C, mild depression, anti-social disorder, and a history of polysubstance dependence, in remission by report, that either individually or in combination are "severe" and have significantly limited his ability to perform basic work activity for a period of at least 12 consecutive months(20 CFR 406.920(c)) (R. 21);

3.  Coen has not had an impairment or combination of impairments since April 10, 2007 that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926) (R. 22);

4.  Since April 10, 2007, Coen has retained the residual functional capacity to perform a range of entry level, unskilled work activity that requires no more than a "light" level of physical exertion; affords a sit/stand option and accommodates the need to stand one hour followed by five minute breaks as needed; requires no climbing of ladders, ropes or scaffolds, or more than occasional performance of other postural movements (i.e. balancing, climbing ramps/stairs, crawling, crouching,

3

**COEN V. COMMISSIONER OF SOCIAL SECURITY**                    **1:11CV45**

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

kneeling and stooping); entails no concentrated or frequent exposure to temperature extremes, vibration, or hazards (e.g. dangerous machinery, unprotected heights); requires ambulation only on reasonably level terrain or surfaces; allows for occasional ambulation with a cane; involves no work in industries were food is used for consumption or with medical services or providers; involves only routine and repetitive tasks with things as opposed to people; involves only simple instructions; involves no more than occasional contact with the public; and involves no production line work (20 CFR § 416.967(b)) (R. 22-23);

5.   Coen has lacked the ability to perform the requirements of any past relevant work since April 10, 2007(20 CFR 416.965) (R. 27);

6.   For decisional purposes, Coen is appropriately considered as a "younger individual age 18-49" (sic) on the date the application was filed (20 CFR 416.963) (R. 27);

7.   Coen has a high school education and is able to communicate in English (20 CFR 416.964) (R. 27);

8.   Coen has a "skilled/semiskilled" work background but, since April 10, 2007, has lacked the residual functional capacity to engage in or sustain any "skilled/semiskilled" work activity and has no particular skills that are transferable to any job that remains within that residual functional capacity (20 CFR 416.968) (R. 27);

9.   Considering Coen's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 416.969 and 416.969a) (R. 27); and

10.  Coen has not been under a disability, as defined in the Social Security Act, at any time since April 10, 2007, the date the application was filed (20 CFR 416.920(g) (R. 28).

4

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION
_____

IV. **REPORT AND RECOMMENDATION**

Following a careful and extensive review of the evidence of record, the magistrate judge concluded that the "ALJ's decision with respect to listing 5.0 was insufficiently reasoned to allow for meaningful judicial review and requires remand solely for the purpose of reviewing the medical evidence of record at the time of the ALJ decision and application of that evidence to the 5.0 listing for hepatitis C" (R&R 59).

The magistrate judge recommended 1) **DENYING IN PART** the defendant's motion for summary judgment, **GRANTING IN PART** the plaintiff's motion for summary judgment, and remanding this matter solely to determine whether Coen's symptoms at the time of the ALJ's decision met or equaled listing 5.0, and 2) **DENYING** plaintiff's motion for summary judgment with respect to all other claims of error (R&R at 59).

V. **MEDICAL EVIDENCE**

The medical evidence of record includes:

1.    A December 4, 2006 report from LabCorp for a Hepatitis Acute Panel, indicating negative results as to A and B(R. 289);

5

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

2.    January 10, 11, 12, 15, 16, and 26, 2007 reports from White Chiropractic, indicating Coen complained of low back pain and received chiropractic treatments(R. 284-88);

3.    A January 15, 2007 office note from Kenneth Kline, M.D., indicating treatment for a back injury from a fall that resulted in thoracic back pain at T9-L1 radiating "up and down his back with the spasm and a little bit in his legs associated with some weakness in his legs because it hurt[] to move them, but no paresthesias." Treatment included a Depo-Medrol injection that initially helped; however, Coen returned in two days with complaints of pain. Dr. Kline prescribed prednisone for the inflammation, Percocet for pain, and instructed Coen to continue chiropractic treatment. Dr. Kline noted Coen reported a history of being an "18-pack-a-year" smoker and denied any use of alcohol (R. 297);

4.    A January 23, 2007 office note from Dr. Kline, indicating Coen reported pain in his right lower back and hip, a request for pain medication and a prescription for Flexeril (R. 298);

5.    A February 26, 2007 office note from Dr. Kline, indicating Coen reported his pain was "well" and he had returned to work as a painter for four (4) days when the pain returned.  Dr.

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Kline gave him a Depo-Medrol injection and recommended physical therapy (R. 299);

6.   A March 6, 2007 office note from Dr. Kline, indicating Coen reported low back pain and received a prescription for Oxy IR (R. 300);

7.   A March 29, 2007 lumbar spine MRI from Stonewall Jackson Memorial Hospital, indicating a "mild annual bulge at the level of the 4th lumbar interspace. There [was] some minimal disk protrusion at the level of the lumbosacral interspace with some central neural compression at this level.  Examination [was] otherwise negative" (R. 294, 305);

8.   A May 9, 2007 office note from Dr. Smith, indicating Coen complained of low back pain, and requested and received a prescription renewal for Dilaudid (R. 308, 329);

9.   A May 31, 2007 office note from Dr. Smith, indicating he had treated Coen for herpes on his right chin and low back pain. Dr. Smith noted that Coen had seen a "[doctor] in Morgantown [who] recommended to continue [with] the PCP (primary care physician) for now." Dr. Smith declined to prescribe medication pending receipt and review of the "report" from the pain clinic (R. 328);

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

10.  A June 25 2007 report from Minnie Hamilton Health Care Center ("MHHCC"), indicating Coen complained of back pain, requested medication, received a prescription for Dilaudid, and a referral to Dr. Famularcano (R. 327);

11.  A June 29, 2007 report from Precilla Tecson Famularcano, M.D., his treating physician, indicating Coen reported injuring his back five years earlier while lifting a pipe. Dr. Famularcano noted that Coen's March 30, 2007 MRI had "revealed mild annular bulge at the level of L4" and "some minimal disk protrusion on the level of the lumbosacral interspace with some central neural compression at this level." She also noted that Dr. Voelker had recommended "conservative management like physical therapy, TENS unit, use of nonsteroidal anti-inflammatory, avoidance of long term narcotics, and also referral for possible epidural injection." Dr. Famularcano noted Coen reported that Dr. Kline had given him an epidural injection and prescribed Percocet; however, after Coen reported that he was positive for hepatitis C and hydromorphone was "the only medication that [gave] relief to the pain" Dr. Kline changed the prescription from Percocet to hydromorphone.

Examination revealed "[m]arked tenderness on the level of L4 and L5[] and also on the right buttocks." She noted that Coen

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

"use[d] a cane for support, and he ha[d] a limp favoring the right leg." She found "full rumination of both upper extremities," fifteen (15) degrees of flexion of the right leg, and thirty (30) degrees of flexion of the left leg. Coen reported experiencing numbness and tingling in his right leg. Dr. Famularcano opined that Coen "definitely ha[d] a discogenic disk disease and is experiencing constant or chronic pain. Fortunately, it responds to medication." She referred him to Dr. Patel for pain management (R. 339) and prescribed hydromorphone (R. 338);

12.  A June 27, 2007 report from MHHCC, indicating Coen requested a refill of his pain medicine, was treated for discogenic disk disease, stated he "preferred to be referred to a pain management" physician for treatment, and noting that Coen walked with a cane and a limp. He was prescribed hydromorphone and referred to a pain management clinic (R. 341);

13.  A July 31, 2007 West Virginia disability Determination Services report from Arturo Sabio, M.D., indicating that Coen's chief complaints were low back pain and hepatitis C.  Dr. Sabio reviewed and noted that Dr. Kline's January 15, 2007 impression was lower thoracic and upper lumbar muscle spasms.

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Coen reported that, in January, 2007, "he was bending over a ditch, he picked up a pipe, and he had severe back pain." He further reported waking each morning "with severe pain in the lumbar spine and the lower thoracic spine," and having "to get under a hot shower to get some relief of the pain." He described his pain as constant that increased with repetitive bending, stooping, or lifting.  He further reported his right leg "ha[d] given out," ability to "ride in a car for about one hour" before he needed "to step out to relief (sic) the pain in his back," a diagnosis of hepatitis C in 1993, which he "probably got . . . from tattoos," pain in his right, upper quadrant, no jaundice, tiring easily, becoming "sore" when he medicated with Tylenol, no tolerance for fatty food, weight loss and no "swelling in his belly" (R. 311-12).

Examination revealed Coen was alert and oriented times three, had a normal gait, used no assistive devices, had stability at station, had normal results of HEENT, neck, cardiovascular, chest, abdomen, extremities, and spine, cervical spine range of motion "allow[ed] 60 degrees of flexion, 75 degrees of extension, lateral flexion [was] 45 degrees bilaterally, and rotation [was] 80 degrees bilaterally," shoulder abduction and forward flexion of one-hundred

10

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

eighty (180) degrees bilaterally, adduction was fifty (50) degrees bilaterally, internal rotation was forty (40) degrees bilaterally, and external rotation was ninety (90) degrees bilaterally (R. 312-13). Coen's straight leg raising was sixty (60) degrees on the right and eighty (80) degrees on the left and was "restricted by pain in the lumbar spine." His lumbar spine flexion was forty-five (45) degrees and ten (10) degrees laterally to either side "restricted by pain in the lumbar spine." His hips "allow[ed] 100 degrees of flexion bilaterally, extension [was] 30 degrees bilaterally, abduction [was] 40 degrees bilaterally, and adduction [was] 20 degrees bilaterally." His knees "allow[ed] 90 degrees of flexion," his ankles "allow[ed] 20 degrees of dorsiflexion and 40 degrees of plantar extension bilaterally" (R. 314). He was neurologically intact, his sensory function to light touch and pinprick was intact throughout, his motor strength was 5/5 bilaterally, his deep tendon reflexes were 2/4, his Babinski reflex was negative, he could ambulate on his heels, toes, and heel-to-toe, he could stand on one leg at a time, he could squat "only halfway," and his fine manipulation movements were well preserved (R. 314).

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Dr. Sabio's impression was hepatitis C by history, and degenerative disk disease.  He noted "slight tenderness in the right upper quadrant with a slight enlargement of the liver to a maximum of two finger breaths below the right costal margin," no spider angioma, and no ascites. He further noted that Coen was not in liver failure (R. 314);

14.  An August 7, 2007 Physical Residual Functional Capacity Assessment from Fulvio Franyutti, M.D., indicating Coen could occasionally lift and/or carry twenty (20) pounds, frequently lift ten (10) pounds, stand and/or walk for a total of about six (6) hours in an eight (8) hour work day, sit for a total of about six (6) hours in an eight (8) hour workday, push/pull unlimited, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, could never climb ladders, ropes or scaffolds, had no manipulative, visual or communication limitations, could tolerate unlimited exposure to extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, and poor ventilation, and should avoid concentrated exposure to extreme cold, vibration, and hazards.  Dr. Franyutti noted that Coen appeared to be "partially credible, allegations partially supported by findings" (R. 317-21);

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

### ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

15.  An August 24, 2007 report from  MHHCC, indicating Coen complained of low back pain and received a prescription for hydromorphone (R. 342);

16.  A September 26, 2007 report from MHHCC, indicating Coen reported intolerable back pain, anxiety and sleeplessness and received a prescription for hydromorphone (R. 343);

17.  A September 26, 2007 report from LabCorp, indicating a positive test for opiates that contained a note that Coen "had Sudafed for cough –might (sic) caused . . . [positive] result" (R. 335);

18.  An October 24, 2007 report from a physician at MHHCC, indicating Coen complained of low back pain and received a prescription for hydromorphone  (R. 347).

19.  A November 6, 2007 report from Dr. Patel at the Pain Management Center, indicating Coen reported "chronic but recurrent back and hip pain" that had been present for eleven (11) months. The pain was "localized over lower back and radiating to the right hip and leg."  Coen described his pain as achy, dull, leg cramps, and "mostly at night." Coen described his pain as eight (8) on a scale of one (1) to ten (10). The report notes that Coen's pain

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

"improve[d] some with conservative treatment including bed rest, analgesics (Hydro morphine) . . . ."

Examination revealed "[t]enderness over sacroiliac joint area and lumbar para-spinal facet joint," lower lumbar spine tenderness with restricted spine movement with flexion, extension, and to some extent with lateral rotation, straight leg raising test was positive at twenty-five (25) degrees, positive for "distress due to severe lower back pain radiating to the right lower extremity." Coen was alert and oriented. Dr. Patel noted Coen's x-ray showed "[b]ulging disc at L4, central neural compression," and diagnosed "[b]ulging L4 disc, radiculopathy due to nerve root compression, degenerative disc disease, back and hip pain, sacro-ilitis." He prescribed nerve blocks, physical therapy, exercise program, and pain medications, and opined that he "should be able to help the patient's pain condition." Dr. Patel administered a right sacroiliac joint injection and noted that Coen's primary care physician would prescribe his narcotic pain medication(R. 462-63);

20. A November 28, 2007 report from Dr. Smith, indicating Coen reported he had "been out of pain meds (for) 2 days," that an appointment with a Dr. Precilla [Famularcano] had been canceled, and that he "need[ed] something to help him through." Coen also

14

COEN V. COMMISSIONER OF SOCIAL SECURITY                1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

reported he had been having some "bowel accidents & anxiety" (R. 344);

21.   A November 30, 2007 report from MHHCC, indicating Coen stated that the "epidural caused him excruciating pain," and oral medication helped his pain. He received a prescription for hydromorphone (R. 348);

22.   A December 27, 2007 report from Dr. Smith, indicating Coen sought a refill of his Dilaudid and a prescription for hydromorphone. Dr. Smith noted that he informed Coen he "needs new PCP or no other narcotics." Dr. Smith prescribed hydromorphone (R. 325-26, 386);

23.   A December 27, 2007 report from LabCorp, indicating Coen tested positive for opiates (R. 332, 334, 417-19);

24.   A January 25, 2008 report from MHHCC, indicating Coen complained of pain and received a prescription for hydromorphone(R. 385);

25.   A February 19, 2008 Physical Residual Functional Capacity Assessment from Porfirio Pascasio, M.D., indicating Coen could occasionally lift and/or carry twenty (20) pounds, frequently lift and/or carry ten (10) pounds, stand and/or walk for a total of about six (6) hours in an eight (8) hour work day, sit for a total

COEN V. COMMISSIONER OF SOCIAL SECURITY                1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

of about six (6) hours in an eight (8) hour workday, had unlimited ability to push/pull, could occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, had no manipulative, visual, or communicative limitations, should avoid concentrated exposure to extreme cold and hazards, and had unlimited ability for exposure to extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation was unlimited (R. 351-54);

26. A February 22, 2008 Psychiatric Review Technique from Bob Marinelli, Ed.D., indicating Coen had no medically determinable impairment (R. 358);

27. A March 25, 2008 office note from Dr. Famularcano, indicating an evaluation for kidney stones, complaints of difficulty with bending, doing house and yard work, "getting in and out of the car . . . lifting, sitting, stairs and twisting motion." Coen reported he had received an epidural steroid injection for his back pain. Dr. Famularcano diagnosed low back pain and kidney stone, stressed the "importance of daily adherence of medication administration" and prescribed Bactrim, hydromorphone, and Duragesic patch (R. 374-75);

16

COEN V. COMMISSIONER OF SOCIAL SECURITY                1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

28.  An April 24, 2008 office note from Dr. Famularcano, indicating Coen reported difficulty with "bending, getting in and out of the car, getting in and out of a chair, kneeling, lifting, putting on socks and shoes, sitting, stairs, twisting motion, walking and weight bearing," inability "to participate in baseball, basketball, biking, football, golf, hockey, racquetball, running, skiing, soccer, softball, tennis and volleyball."  The examination revealed Coen was five (5) feet, eleven (11) inches tall, and weighed two-hundred, thirty-six (236) pounds, was "pleasant, alert, oriented and in no apparent distress," and was positive for paraspinal muscle spasm and SI joint tenderness.  Dr. Famularcano diagnosed low back pain (R. 372) and instructed Coen to "walk at least a mile a day for exercise." She continued the Bactrim, Duragesic patch, and hydromorphone (R. 372-73);

29.  An April 24, 2008 West Virginia Department of Health and Human Resources Medical Review Team (MRT) General Physical (Adult) report from Dr. Famularcano, indicting Coen had poor posture and walked with a limp due to back pain.  She noted Coen had chronic back pain caused by discogenic disk disease, was positive for "tenderness over the L5 joint," had paraspinal muscle spasm, medicated with a Duragesic patch and hydromorphone. Based on an

17

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

"MRI - bulging disk lumbar" and specialist's consultations that had been "done in the past," she noted that Coen could not work full time and, within a work situation, he should avoid lifting, bending, standing and sitting "for a long time," and his "[d]uration of inability to work full time" was indefinite.  She further opined that Coen was "at the stage that can't perform customary work or employment due to the limitation he can do [sic] due to his back problem" (R. 377-79);

30.  A May 22, 2008 office note from Dr. Famularcano, indicating Coen complained of lumbar pain. Dr. Famularcano found Coen had "difficulty with bending, kneeling , lifting, stairs, standing, twisting motion, walking and weight bearing," was oriented and in no distress, had L5 joint tenderness, paraspinal muscle spasm, and S1 joint tenderness, and examination of his joints and muscles was  "unremarkable." She diagnosed low back pain and instructed him to exercise regularly (R. 415-16);

31.  A June 19, 2008 office note from Dr. Famularcano, indicating Coen complained of back pain.  Dr. Famularcano found Coen had "difficulty with bending and lifting," was in no distress, had L5 joint tenderness and  S1 joint tenderness and examination of his joints and muscles was "unremarkable." Coen's neurological

18

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

examination was "unremarkable." Dr. Famularcano diagnosed low back pain and instructed Coen to exercise regularly (R. 413-14);

32. A July 16, 2008 office note from Dr. Famularcano, indicating Coen complained of back pain.  Dr. Famularcano found Coen had "difficulty with bending, kneeling, lifting, stairs, standing, twisting motion, walking and weight bearing," was in no distress,  had "L5 tenderness, paraspinal muscle spasm, S1 joints tender and paraspinal tenderness," examination of his joints and muscles was "unremarkable," and muscle tone was normal. She instructed Coen to exercise regularly and prescribed hydromorphone and Duragesic patch (R. 411-12);

33. An August 14, 2008 office note from Dr. Famularcano, indicating an evaluation of Coen's pain. Dr. Famularcano found Coen had "difficulty with bending, walking and weight bearing," was positive for numbness, was in no distress, was positive for "L5 joint tenderness, S1 joints tender and paraspinal tenderness" and a unremarkable neurological exam. Dr. Famularcano diagnosed low back pain and again instructed Coen to "get regular exercise." She prescribed hydromorphone and Duragesic patch (R. 409-10);

34. A September 5, 2008 report from United Summit Center, indicating Coen complained of stress and anxiety, reported

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

degenerative disk disease, liver disease, and hepatitis C, stated
his stress was caused by his "quitting work," and further reported
he had not worked in two (2) years. The mental status evaluation
revealed Coen woke five (5) or six (6) times per night, had a poor
appetite, had lost thirty (30) pounds in the past fourteen (14)
months, felt anxious, had a depressed affect and mood, was
irritable and moody "at times," experienced a "big decrease in
interest in playing his music," worried excessively, made poor eye
contact, tired, had good concentration, and  good memory.  The
diagnosis was depressive disorder, NOS (R. 395);

35.  A September 10, 2008 office note from Dr. Famularcano,
indicating follow-up treatment for pain located in the lumbar spine
and complaints of anxiety. Coen had "difficulty with bending, house
and yard work, kneeling, stairs, standing, twisting motion, walking
and weight bearing," and was in no distress. The examination
revealed "L5 joint tenderness, 11 joint tender and paraspinal
tenderness," "[i]nspection and palpation of bones, joints and
muscles [was] unremarkable," and normal muscle tone. She diagnosed
low back pain and instructed Coen to exercise regularly, drink
plenty of fluids, and diet,  informed him he was "allow[ed] only
light carrying and lifting and modify activities of daily living

COEN V. COMMISSIONER OF SOCIAL SECURITY                1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

based solely upon allowing for mild symptoms." She prescribed hydromorphone and Duragesic patch (R. 405-08);

36.  A September 26, 2008 report from United Summit Center, indicating Coen began treatment for "depression, withdrawal, guilt, anxiety, hopelessness, agitation, low energy, decreased sleep, and loss of interest" (R. 388). The report noted Coen had a "history of going in and out of jail for felony offenses" and had "difficulty gaining employment due to the number of felonies he has" (R. 389);

37.  An October 7, 2008 office note from Dr. Famularcano, indicting Coen complained of pain in his right hip, back and right buttock.  Dr. Famularcano found Plaintiff had "difficulty with bending, house and yard work, kneeling, stairs, standing, twisting motion, walking and weight bearing"  The examination revealed "L5 joint tenderness, S1 joint tender and paraspinal tenderness," "[i]nspection and palpation of bones, joints and muscles [was] unremarkable," normal muscle tone, and a diagnosis of low back pain. She instructed Coen that "exercise, physical therapy, and other non-medicinal therapies [were] important parts of the treatment plan . . . ," prescribed hydromorphone and Duragesic patch and informed Coen that "early refills and/or replacement of lost prescriptions may not be performed . . ." (R. 405-6);

21

COEN V. COMMISSIONER OF SOCIAL SECURITY                     1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

38.  Reports  dated  December  3  and  December  18,  2008  from
Joseph Richard, Ed.D., indicating Coen lived on "the family farm in
Gilmer  County,"  was  employed  as  a  cab  driver  at  the  time  of  the
evaluations,  took  Seroquel  as  a  sleep  aid  but  "often  [woke]  up
during  the  night,"  medicated  his  back  pain  with  hydromorphone,  was
positive  for  hepatitis  C,  which  was  "probably  the  result  of  a  very
significant  substance  abuse  history,  which  began  at  age  14,"  had
past  history  of  drug  abuse,  including  marijuana,  amphetamines  and
cocaine,  had  been  a  "severe  alcoholic,"  had  been  married  four
times, twice to the same woman, and had no children.

Dr.  Richard  noted  Coen  had  a  high  school  education  and  had
"technical  training  for  hydraulics  in  the  military,"  as  well  as
"certification  in  plumbing."   Coen  stated  his  main  work  had  been
"in  construction,  doing  carpentry  and  concrete  work."   Dr.  Richard
noted  Coen  "had  been  incarcerated  a  number  of  times,  beginning  at
age  21  for  one  year  for  Forgery  and  Uttering  .  .  .,  two  years  for
Armed  Robbery  .  .  .,  at  age  24,  four  years  for  a  Probation
Violation  .  .  .,  at  age  34,  another  year  at  age  44  for  Probation
Violation."   Coen  had  completed  a  two-and-a-half  (2 ½) year  prison
program  "which  emphasized  coping  skills."   Coen  lived  with  his

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

mother on a six-hundred (600) acre farm "that was given to him by his family."

Results from the Kaufman Brief Intelligence Test indicated Coen was in the fifty-eighth (58th) percentile for vocabulary; sixty-sixth (66th) percentile for matrices, and sixty-third (63rd) percentile for full-scale composite.  Dr. Richard noted Coen's overall performance "[fell] well within the average range."  Results from the Wide Range Achievement Test – Third Revision revealed reading, standard score 109, post high school, spelling, standard score 100, high school, and arithmetic, standard score 97, high school.  Dr. Richard noted Coen's "achievement is commensurate with his school aptitude."  According to Dr. Richard, the "[r]esults of the mental status evaluation indicate that [Coen] has intact immediate and delayed recall, as well as recent and remote memory," was oriented as to person, time and place, had good affect and behavior, and showed no evidence of thought disorder.  Coen "denied most symptoms of anxiety, with some symptoms of depression."  Dr. Richards diagnosed depressive disorder, NOS, a GAF of fifty-five (55), and recommended Coen "receive individual counseling" (R. 390-93);

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

39.  A December 2, 2008 office note from Dr. Famularcano, indicating Coen reported that he had fallen and "hit his left lumbar" area. Dr. Famularcano noted Coen had difficulty with "bending, house and yard work, kneeling, lifting, stairs, standing, twisting motion, walking and weight bearing." Her examination revealed Coen was in no distress, was positive for "L5 joint tenderness, S1 joint tender and paraspinal tenderness," had normal musscle tone, and a normal neurological examination. She instructed Coen that exercise, physical therapy, and other non-medicinal therapies" were "important parts of the treatment plan . . . ," prescribed hydromorphone and Duragesic patch and informed Coen that "early refills and/or replacement of lost prescriptions may not be performed . . . ," and to exercise regularly and diet (R. 402-3).

40.  A January 20, 2009 office note from Dr. Famularcano, indicating Coen had "difficulty with bending, house and yard work, kneeling, stairs, standing, twisting motion, walking and weight bearing" (R. 398).  Examination revealed "L5 joint tenderness, S1 joint tender and paraspinal tenderness,"  palpation of bones, joints and muscles [were] unremarkable" and normal muscle tone. She diagnosed low back pain, instructed Coen that "exercise, physical therapy, and other non-medicinal therapies are important parts of

24

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

the treatment plan . . . ," prescribed hydromorphone and Duragesic patch, and informed him that "early refills and/or replacement of lost prescriptions may not be performed . . ." (R. 400); and

41. A March 5, 2009 "Primary Care Physician Questionnaire" from Dr. Famularcano, indicating that she had been treating Coen since March, 2008, and had last examined him on January 20, 2009, and noting a "past relevant medical history" of kidney stones, a diagnosis of "constant pain in his back and in his legs" (R. 421). Even though Dr. Famularcano did not document any clinical findings, laboratory tests or other data as a basis for her diagnosis, she listed impairments of chronic low back pain with radiculopathy, kidney stones, degenerative disc disease of his lumbar spine, hepatitis C, and chronic fatigue.

She stated that Coen could not walk or stand most of the time, lift fifty (50) pounds frequently, or lift one-hundred (100) pounds occasionally, could perform light work, which included a "significant amount of walking and standing, lifting 10 pounds frequently and up to 20 pounds occasionally, or sitting most of the time pushing and pulling." She also stated that Coen could not perform sedentary work, which included "[s]itting most of the time, walking and standing occasionally, lifting no more than (sic) 10

25

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

pounds." She opined that Coen was "maybe able to do some paper work, sitting down for about" one (1) hour" but "[m]ust . . . alternate positions frequently . . . [d]ue to exacerbation of pain when in one position for long period of time." Dr. Famularcano found Coen needed a sit-stand option, could sit at one time for thirty (30) minutes, stand at one time for thirty (30) minutes, walk at one time for thirty (30) minutes, could be "up on his[] feet" for two (2) hours "[i]f alternately walking and standing were combined," could sit upright for one (1) hour in an eight (8) hour workday, advised that Coen might need to recline or lie down during the day and put his feet up, might require frequent rest periods from work during the day, could infrequently climb, balance, stoop, bend, kneel, crouch, crawl, stretch, reach, and squat during an eight (8) hour work day, was unlimited in his exposure to noise, should avoid concentrated exposure to excessive humidity, cold or hot temperatures, fumes, dust, and environmental hazards, and should avoid all exposure to machinery, jarring or vibrations. Dr. Famularcano opined that Coen would experience severe chronic pain and intermittent pain, needed no assistive devices for ambulation, had to frequently elevate his feet because he could not "stand for a long period of time," could not use his feet/legs for repetitive

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

movements as part of a job because he "experienced pain in long standing & sitting," could perform simple grasping and handling, arm controls, fine manipulation and fingering in performing repetitive tasks in a job in the "AM" portion of the work day, had loss of grip strength in his hands, bilaterally, but no numbness, could not sit upright for "prolonged periods of time at a desk, console, etc. . . ." due to experiencing "severe back pain in sitting for long period of time," would be absent from work more than twice a month, had no "degree of 'functional overlay'" specifically no mental impairment that, in combination with his other impairments, resulted in a greater degree of disability, and was incapable of performing any full-time job specifically from January 2, 2007, to the date of the questionnaire.  Dr. Famularcano opined that Coen was unable to work "[d]ue to pain . . . pt. experienced due to abnormality of lumbar spine" (R. 422-29).

**New Evidence Submitted to Appeals Council:**

1.   A May 27, 2009 report from Dr. Whitehair for a follow-up examination, indicating Coen had been "dismissed from . . . [the Minnie Hamilton pain clinic] for alleged misuse of narcotic medication - pt state[d] that he had taken one of his sister's

27

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

lortab prior to his office visit there as he had been out of his own pain medication." Coen complained of worsening low back pain and numbness in his leg that prescription pain medications helped. The examination produced normal results except for low back pain and right leg numbness, mood was stable, depression was stable, functional ranges of motion in all four extremities, equal strength throughout, positive straight leg raising test, 2/4 reflexes bilaterally, and equal and adequate peripheral pulses. Dr. Whitehair diagnosed low back pain with neuropathy, prescribed hydromorphone and Quetiapine, and noted this was "likely the last time that [she] [would] fill narcotic prescription" (R. 526-28);

2.    A June 24, 2009 report from Dr. Whitehair, indicating Coen reported that his back pain was worsening and radiating down his right leg. He reported mowing his grass three days earlier. Dr. Whitehair diagnosed chronic back pain with radiculopathy and prescribed hydromorphone and Toradol and scheduled an MRI (R. 524-25);

3.    A July 1, 2009 report from Dr. Whitehair, indicating Coen was willing "to do pt for back pain – has tried in the past – didn't help." Coen reported he had "tried nerve blocks – no help in the past." A review of Coen's systems produced normal results,

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

except he stated he had chronic back pain.  Dr. Whitehair noted Coen's mood was stable.  She diagnosed chronic back pain, hepatitis C, and depression, ordered blood work, prescribed hydromorphone and informed Coen that she would  no longer fill narcotics (R. 523);

4.   A July 8, 2009 lumbar spine MRI report from Braxton County Memorial Hospital, indicting "degenerative changes with diffuse disc bulges L4-5 and L5-S1" and no "disc herniation or spinalstenosis" (R. 519, 529);

5.   An August 26, 2009 report from Dr. Orvik at Stonewall Jackson Memorial Hospital emergency department, indicating Coen complained of "red splotches that appeared after he mowed "grass Sat & Sunday [in] shorts," pain in his hand, elbow, and shoulder joint pain, pain in the bottom of his neck, and lower leg numbness. He was admitted to the hospital.

The provisional diagnosis was "leg rash with diffuse polyarthritis of unclear etiology most likely secondary to some type of viral infection," chronic back pain, and history of hepatitis C. Coen's "laboratory studies were fairly unremarkable," he had "slightly elevated" liver enzymes and a normal chest x-ray. The biopsy of his left leg revealed "a leukocytoclastic vasculitis." His neurological examination was within normal limits,

29

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

his extremities were positive for bilateral pedal edema and rash. His final diagnosis was "[a]cute viral infection with diffuse polyarthritis," history of hepatitis C, chronic back pain. Dr. Orvik continued his prescriptions for hydromorphone, Oxycodone, and Seroquel, prescribed Solu-Medrol and Rocephin and noted Coen "improved dramatically" while hospitalized.  Dr. Narla noted that most of "numerous rheumatologic testing" was unremarkable. At discharge on August 31, 2009, Coen was instructed to continue care with his regular physician and to be evaluated and treated for hepatitis C (R. 526-541);

6.  A September 2, 2009 report from Dr. Whitehair, indicating Coen complained of swelling joints and rash, swollen ankles, "black/blue" ankles, and rash on his lower extremities. Coen stated that he had improved "on steroids," had been diagnosed with rheumatoid arthritis, and his back pain was better. Dr. Whitehair noted Coen had "never been evaluated by gastroenterologist or infectious disease doctor for hep C" (R. 570).  The examination was normal and revealed a stable mood and affect and  no ankle swelling.  Dr. Whitehair diagnosed petechiae, thrombocytopenia, and hepatitis C, noted that Coen's  thrombocytopenia had improved and increased his prednisone (R. 571);

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

7.    A September 9, 2009 report from Dr. Whitehair, indicating that Dr. Lonasso informed Coen his "biosy (sic) was vasculitis and that [he] definitely has rheumatoid arthritis based on biopsy results," that the predisone had resolved the rash and swelling. Coen requested a one week prescription for Dilaudid until "his appt with the pain clinic" because he could not "function due to pain without the pain medications." He reported "working in the garden digging potatoes." Dr. Whitehair noted Coen's MRI showed mild degenerative changes in his back, listed Coen's "active problems" as chronic back pain, depression, hepatitis C, and throbocytopenia. The examination revealed normal results except for chronic back pain, stable mood and affect.

Dr. Whitehair prescribed a one week supply of Dilaudid, but noted that the prescription would not be refilled "anymore after today under [any] circumstances here at this clinic," and that Coen "voice[d] understanding" (R. 574). An addendum to the September 9, 2009, office notes indicated that Coen "state[d] that he is following with USC - reports that his mood is good on current medications . . ." (R. 573-75).

8.    A September 8, 2009 x-ray of Coen's left foot revealed "a small sub-calcaneal spur" (R. 568). Dr. Anderson noted that Coen

31

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

requested an epidural injection to relieve his "severe pain, numbness, burning and tingling L foot which [woke] him up and prevent[ed] him from sleeping." Dr. Anderson found "paresthesias BL in a stocking distribution from the ankle mortis to the toes" and stable neuropathy. Coen received the injection (R. 567).

9.   A September 12, 2009 abdominal CT scan, indicating no acute abnormality, "[n]odular liver contour suggestive of hepatocellular disease," splenomegaly "with possible upper abdominal varices," which suggested portal hypertension, and small abdominal nodes of uncertain significance. The September 12, 2009 pelvic CT scan was negative (R. 582);

10.  A September 23, 2009 evaluation report for thrombocytopenia and hepatitis C from Dr. Brager, indicating Coen's platelets were "57 - 97,000" during his hospitalization in August, 2009. Coen complained of increased bruising, "but no major bleeding," recent weight loss, decreased energy, fatigue, abdominal pain, nausea, vomiting, joint pain, and bruising easily. Coen reported he smoked one package of cigarettes per day, had worked as a plumber, but no longer worked because he was disabled (R. 580). Dr. Brager noted that "[i]nspection and palpation of the skin and subcutaneous tissues of head, neck, chest, breast, back, abdomen,

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

genitalia and extremities [were] without rashes, lesions, ulcers, photo damage," grossly intact cranial nerves, deep tendon reflexes were "2+4+ and symmetrical," no Babinski or clonus, sensation was normal to touch, pinprick and vibration, normal proprioception, appropriate mood and affect and was oriented, times four. Dr. Berger assessed thrombocytopenia, which was "likely due to splenomegaly from portal HTN and cirrhosis/hepatitis" and opined that he "need[ed] to review recent abd CT to confirm splenomegaly." Dr. Brager also assessed hepatitis C, vasculitis/arteritis, and pain in abdomen, due to enlarged liver. After Coen requested narcotic pain medication, Dr. Brager prescribed Dilaudid and instructed Coen to return in six (6) months (R. 581);

11. A September 26, 2009 admission report from Stonewall Jackson Memorial Hospital, indicating that Coen had been admitted for vasculitis and increased redness in his lower extremities, diffused tenderness, purpuric rash, and increased redness with chief complaints of "[e]dema, nonpitting, to bilat, lower extremities. Spots/petechiae noted on bilat lower extremities, extends to groin. Legs are painful." The report noted that Coen's past medical history included hepatitis C, degenerative disk disease, and rheumatoid arthritis. On examination Coen's

33

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

extremities and back and his neurological examination revealed normal results and his musculoskeletal examination produced pain. He received treatment with intravenous steroids (R. 585-600);

12.  A September 27, 2009 report from Dr. Sabbagh, indicating Coen's leg pain and rash had "slightly improved," prescription for prednisone, and discontinuation of Solu-Medrol due to elevated glucose.  Dr. Sabbagh diagnosed acute vasculitis, hyperglycemia, history of back pain, and anxiety (R. 607);

13.  A September 28, 2009 report from Dr. Sabbagh, indicating improvement in the redness in Coen's legs and that Coen reported chest pain. He received prescriptions for prednisone and Glucophage and instructions to "follow up with rheumatology" (R. 608);

14.  An October 5, 2009 admission report from Stonewall Jackson Memorial hospital for vasculitis, cellulitis, and hepatitis C (R. 663), with complaints of bilateral lower extremity pain and swelling. Coen was positive for "some spreading erythema," received treatment with steroids and antibiotics.  He also was positive for edema and received treatment with Lasix. Coen reported bilateral hand numbness, weakness, easy bruising and bleeding, inability to work as a plumber, ability to work in his garden, did

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

not consume alcohol, continued smoking, and never used intravenous drugs.

Examination revealed no acute distress, an "erythematous rash over the bilateral lower extremities," normal strength and sensation in his bilateral upper and lower extremities, and reported pain in his lower extremities. Dr. Williams diagnosed vasculitis "and likely secondary cellulitis of the bilateral lower extremities" and thrombocytopenia that was "likely related to his hepatitis C." It was noted that Coen "move[d] all extremities well. Gait [u]nsteady.  Needs assistance of one or more persons.  Uses cane. Generalized body weakness." Coen was discharged on October 8, 2009 (R. 663-678);

15.  A December 22, 2009 report for an upper endoscopy at United Hospital Center, in which Dr. Pickholtz noted Coen had had untreated hepatitis C for the past twenty (20) years as a result of intravenous drug abuse. Coen medicated with Dilaudid for liver pain. Examination revealed Coen was alert and in no distress, was not jaundiced, did not have an enlarged thyroid, had a systolic ejection murmur, and a possibly enlarged spleen. Dr. Pickholtz opined that he "believe[d] [Coen] had splenomegaly" (R. 768);

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

### ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

16.  A December 14, 2009, report from Lively Health Care Center, indicating Coen reported chronic pain, edema, and hepatitis C (R. 784). Coen entered into a Chronic Narcotic/Medication Contract with Lively Health Care Center for lumbar pain and hepatitis C (R. 787);

17.  A December 28, 2009 report from Lively Health Care Center, indicating Coen had experienced back pain while shoveling snow. Coen reported that he had "finished" the prescribed Oxycodone, was instructed to rest his back and was prescribed Dilaudid (R. 790);

18.  A January 25, 2010 report from Lively Health Care Center, indicating Coen had a follow up appointment for his pain care.  At that appointment, Coen reported Dilaudid was "relieving pain well," and was continued on Dilaudid (R. 791);

19.  A March 5, 2010 report of the results from a CT scan of Coen's abdomen, indicating splenomegaly, celiac axis lympnadenopathy, nonspecific, and a cyst in the lower pole of the right kidney. An ultrasound of Coen's abdomen showed splenomegaly, limited midline structures, and small lower pole cyst in right kidney (R. 780-81);

36

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

20.  A March 23, 2010 report from Lively Health Care Center, indicating Coen had a follow up appointment for his chronic pain and hepatitis C. Coen reported his "[p]ain okay on Dilaudid" and was continued on Dilaudid (R. 792);

21.  A May 21, 2010 report from Lively Health Care Center, indicating Coen received refills of pain medication prescriptions and was diagnosed with chronic pain, bursitis, and allergic rhinitis (R. 814);

22.  A June 17, 2010 report from Lively Health Care Center, indicating Coen requested a refill of hydromorphone because he was "going out of town for a week" (R. 815);

23.  A July 21, 2010 report from Lively Health Care Center, indicating Coen had a follow up appointment for his chronic pain and hepatitis C and a prescription for Dilaudid (R. 816);

24.  An August 8, 2010 report from Lively Health Care Center, indicating Coen had called and requested a refill of his pain medication prescription, and received a prescription for Dilaudid from Dr. Williams (R. 817);

25.  A September 17, 2010 report from Lively Health Care, Center, indicating Coen had called, requested a refill of his pain

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

medication, which Dr. Williams had honored but noted that Coen "need[ed] seen [sic] for further refills" (R. 818);

26. An October 18, 2010 report from Lively Health Care Center, indicating Coen had a follow up evaluation of his chronic pain and hepatitis C and was prescribed Dilaudid (R. 819);

27. An October 21, 2010 neck CT scan report from Charleston Area Medical Center, indicting "[m]ultiple small lymph nodes neck bilaterally, although somewhat more numerous in number than usually expected. Largest is 1 cm size. Solitary left supraclavicular lymph node also demonstrated 8mm site. Based on the abdomen findings, this could be neoplastic based on the number of lymph nodes but nonspecific inflammatory reactive is also in the differential with only borderline large size" (R. 798-99);

28. An October 21, 2010 chest CT scan from Charleston Area Medical Center, indicting, "[n]o lymphadenopathy, mass, or lung infiltrates" (R. 800-01);

29. A November 2, 2010 report from Sandra Elliott, M.D., David Lee Outpatient Cancer Center, from a hematology/oncology clinic consultation, indicating Coen reported experiencing "tiredness, weakness, exertion, nausea and occasional swelling of both lower extremities," being hospitalized five (5) times from

38

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

June, 2009, through October, 2009,  weight gain and pain in his upper abdomen, "more on the right side, but there [was] also pain in the left upper abdomen." Dr. Elliott noted that "[p]art of the picture [was] also complicated by the history of drug overdose, drug abuse and intravenous drug injection in the past." Coen reported abnormal liver function, cirrhosis of the liver, and enlarged lymph nodes in his abdomen, a past surgical history for tennis elbow repair and repair for knife cut to his neck. Coen stated he was seeking disability due to back pain and also stated he had spinal stenosis. He described his symptoms as "night sweats, feeling of weakness, tiredness, and exertion" and elevated temperature, vomiting "at times," abdominal pain, no headache, and a thirty (30) pound weight loss.  He stated that he medicated with hydromorphone.

Examination revealed normal HEENT, neck, and iguinal area, diminished movement with normal breath sounds of his chest, palpable spleen, moderately distended abdomen, edema in both lower extremities, no focal neurologic deficit, and Coen was tremulous. Dr. Elliott Coen was "still under the influence of some sedative agent." Her assessment was thrombocytopenia, history of hepatitis

COEN V. COMMISSIONER OF SOCIAL SECURITY                1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

C, cirrhosis of the liver, and enlarged spleen.  She noted no "positive finding for lymphoma at this time" (R. 802-4;

Also on November 2, 2010 Dr. Elliott's office telephoned the Lively Health Care Center to report that Coen was "asking them for pain meds," telling them "that you will not increase" his dosage, and reporting Coen "told them that he needs them to give him phenergan because you wouldn't give it to him. . . . They informed Coen that they were "not treating his pain at this time" (R. 820); and

30.  A November 24, 2010 report from Charleston Area Medical Center, indicating a normal upper gastrointestinal test  (R. 809) and an abdominal ultrasound showing no abnormalities (R. 811-12);

## VI. SCOPE OF REVIEW

In reviewing an administrative finding of no disability, a district court's scope of review is limited to determining only whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Even prior to Hays, the Fourth Circuit had recognized the specific and narrow scope of judicial review. "We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be

40

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

upheld, even if the court disagrees, so long as it is supported by substantial evidence." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986).

The Supreme Court of the United States has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In Hays, the Fourth Circuit observed that substantial evidence "'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). A reviewing court must also consider whether the ALJ applied the proper standard of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

VII.  <u>OBJECTIONS TO THE R&R</u>

A.

The Commissioner contends that, when the case is reviewed as a whole, the record contains substantial evidence to support the ALJ's decision.  Relying on <u>Cook v. Heckler</u>, 783 F.2d 1168 (4th Cir. 1986), the Commissioner argues that remanding this action solely to review the medical evidence in the record at the time of the ALJ's decision, and the application of that evidence to the 5.0 listing for hepatitis C, to determine whether [Coen's] symptoms met or equaled the listing, is not required. (Dkt. No. 19 at 2).

B.

Coen contends that the magistrate judge  erroneously limited his recommendation to remand to whether Listing 5.0 was met or equaled at the time of the ALJ's decision.  He argues that the evidence he presented to the Appeals Council should be considered on remand because it is "new" and "material" evidence that, if considered, could reasonably have changed the ALJ's decision. The magistrate judge noted in his R&R that, although the ALJ had left the hearing record open for ten (10) days to permit Coen to submit additional evidence, he failed to do so, and later submitted it to the Appeals Council.

42

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Coen argues that, although his major impairment at the alleged onset date of disability was back pain, hepatitis C was a historical diagnosis which, before the end of the relevant period, had become "an issue imposing significant functional limitations" (Dkt No. 20 at 14). He further asserts that the new evidence submitted to the Appeals Council supported those new functional limitations.

Coen also asserts that the ALJ failed to assign appropriate weight to Dr. Famularcano, his treating physician's, functional assessment opinion. Finally, he contends that the ALJ's hypothetical question to the VE was improper, and that the AlJ failed to properly weigh his credibility (Dkt. No. 20 at 11-2).

## VIII.   LEGAL ANALYSIS

### A.   Evidence of Disability due to Hepatitis C

While Coen agrees that the case should be remanded, he seeks review beyond a determination of whether listing 5.00 was met or equaled based on the evidence at the time of the hearing before the ALJ (Dkt. No. 20 at 15). He asserts that the introductory section of Appendix 1, Section 5.00(D)(4)(a)(ii), describes "extrahepatic manifestations" of hepatitis C, including immune dysfunction and rheumatological symptoms involving chronic inflammatory arthritis,

43

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

which, he argues, is one of his extrahepatic manifestations (Dkt. No. 20 at 1-2).

After a careful review of the evidence, the magistrate judge determined, that, with regard to listing 5.0, the ALJ failed to address the specific elements of that listing, in particular, any analysis of the elements of listing 5.00D 4 (a)(I) and (ii) (R&R 58. He noted that, at a minimum, <u>Cook v. Heckler</u>, requires that:

> [t]he ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of Cook's symptoms.  Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination.

783 F.2d at 1174.

Contrary to the argument of the Commissioner, who contends that <u>Cook</u> is distinguishable, the magistrate judge correctly determined that the record in this case contains no reasonable analysis of what evidence the ALJ considered regarding the elements of listing 5.0 prior to concluding that Coen's symptoms relative to his hepatitis C did not meet or equal the listing. Notably, the ALJ failed to even mention the key words of the elements of the listing dealing with hepatitis C, and despite repeated references in the record to a diagnosis of hepatitis C and treatment of related pain,

44

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

the ALJ never addressed the factors of the listing anywhere in her opinion. In sum, she simply failed to provide the required basis for her decision regarding whether Coen's symptoms, or lack thereof, met or equaled listing 5.0 (R&R 58).

As the magistrate judge correctly noted, the ALJ's failure to identify the relevant listed impairments and to compare each to the evidence of Coen's symptoms made it "impossible to tell whether there was substantial evidence to support the determination" (R&R 58). Thus, the Court agrees that the ALJ's decision with respect to listing 5.0 contained insufficient analysis and requires remand for review of the medical evidence of record at the time of the ALJ's decision, and application of that evidence to the 5.0 listing for hepatitis C (R&R 58-9).

Coen argues that, on remand, the evidence presented to the Appeals Council regarding his hepatitis C should be considered because it is "new" and "material" to the determination of disability at the time the ALJ denied disability. He asserts that, if considered, this evidence could reasonably change the ALJ's disability decision (Dkt. No. 20 at 15).

In Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991), the Fourth Circuit held that the Appeals Council would consider  any

45

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

evidence submitted to it if the evidence was (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision.  <u>Wilkins</u> defined the terms "new" and "material" as follows:

> Evidence is new . . . if it is not duplicative or cumulative . . . . Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

<u>Id.</u> at 96.

At the March 3, 2009 administrative hearing, at the request of Coen's counsel, the ALJ left the record open for ten (10) days (until approximately March 14, 2009) to allow for submission of additional medical records.  Coen, however, never submitted additional medical records[1] dated from May 27, 2009 (two days before the ALJ's decision) through November 24, 2010, until after he appealed the ALJ's May 29, 2009 adverse decision on July 9, 2009 (R. 14). The Appeals Council denied Coen's appeal on February 11, 2011 (R. 1-2).

Coen argues that those records submitted to the Appeals Council were relevant to the determination of disability at the time he first filed his application in April 2007, because "[t]he

---

[1] The additional medical records Coen submitted are outlined, <u>supra</u>, at pages 27-40.

46

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

lion's share of the evidence ... related back to the diagnosis of hepatitis C - showing the disease to be active and producing symptoms." Moreover, he asserts "it is only reasonable that the decision might [have] reasonably been different had the ALJ had the benefit of this evidence, particularly since she made the specific finding that 'there is no indication that it [hepatitis C] would prevent him from performing work activity at the above residual functional level" (R&R 53).

When the magistrate judge reviewed the "new" evidence, he concluded, as did the Commissioner, that the records did not constitute new evidence, "[did] not meet the materiality requirement because most of it did not relate to the time period for which benefits were denied," and that Coen had failed to establish good cause for submitting the evidence after the ALJ's decision. At best, he found that the evidence demonstrated a post decision deterioration of Coen's condition (R&R 53-4). This Court agrees with that conclusion.

The following records from May 27, 2009 to August/September 2009 were considered by the magistrate judge in his review of this issue:

47

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

1.   A May 27, 2009 office note from Whitehair-TCHC-Carexpress, indicating functional ranges of motion in all four extremities, a soft, non tender, non distended abdomen, no hepatosplenomegaly , no hernia, and a note that this was likely the last time that [she][would] fill narcotic prescription" ( R. 527-28);

2.   A June 24, 2009 office note with no identifying doctor or treatment facility name, indicating Coen had mowed grass three days earlier, complaints of low back pain that was radiating to right leg, and a request for an MRI. Coen received a prescription for hydromorphone and toradol) (R. 524-25);

3.   A July 1, 2009 office note from Whitehair-TCHC-Carexpress, indicating a prescription for hydromorphone and a note stating that Coen had acknowledged that they "will no longer fill narcotics at this clinic" (R. 523);

4.   A July 8, 2009 MRI, indicating "degenerative changes with diffuse disc bulges L4-5 and L5-S1" but no "disc herniation or spinal stenosis" (R. 519, 529);

5.   An August 26, 2009 Triage Assessment Form from Stonewall Jackson Hospital, indicating Coen complained of a rash after mowing the lawn, a hospitalization where tests revealed fairly

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

unremarkable labs, some slightly elevated liver enzymes and leukocytoclastic vasculitis (swelling) of the legs bilaterally and prescriptions for oxycodone, hydromorphone, Seroquel, Solu-Medrol and Rocephin (R. 532-541);

6.   A September 2, 2009 office note from Whitehair-TCHC-Carexpress, indicating Coen had no ankle swelling, reported his back pain was better, denied fever, chills, unintentional weight loss  or fatigue (R. 570-71);

7.   A September 8, 2009 office note from David Anderson, indicating Coen complained of pain, numbness, burning and tingling in his left foot.  Examination revealed a small sub-calcaneal spur on his left foot. Coen received an epidural injection(R. 567)); and

8.   A September 9, 2009 office note from Leonard-TCHC-Carexpress, indicating Coen requested a prescription of Dilaudid after working in his garden digging potatoes, and noting that the doctor had informed him that he would not refill Dilaudid after this visit (R. 573-575).

The magistrate judge acknowledged that, while the medical records from the August 26, 2009, leg rash and vasculitis, and continuing thereafter, contain exacerbated symptoms of hepatitis C,

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

at best they indicate a deterioration in Coen's previously
asymptomatic condition (R&R 54).

Because the evidence regarding hepatitis C submitted by Coen
demonstrated a worsening of the pre-existing condition that
occurred approximately nine (9) months after the ALJ's decision
through the end of 2010 (R&R 55), the magistrate judge determined
that the evidence failed to establish disability from hepatitis C
during the relevant time period prior to the ALJ's decision.
Accordingly, he concluded that the evidence was not material to the
issue before the ALJ.[2] Mitchell v. Schweiker, 699 F.2d 185, 188 (4th
Cir. 1983).

In light of that, the magistrate judge determined that
permitting consideration of evidence submitted to the Appeals
Council more than a year after the ALJ's decision would be
"tantamount to permitting Coen to prosecute a different and later
disability claim based on the original disability claim filing date
even though the record contains substantial evidence establishing
that Coen was not disabled under his original claim" (R&R 55-6).

_____

[2] He stated that, at best, this evidence might provide support
for a new disability claim with an onset date in September 2010.

50

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

He further determined that consideration of this evidence on remand would frustrate the appeal process and delay a final decision. Id.

The magistrate judge's reasoning is sound, and this Court agrees that there was no error in the Appeals Council's decision not to consider the "new" evidence. It therefore adopts the recommendation in the R&R that such evidence not be considered on remand.

**B.    Treating Physician Opinions**

Coen next argues that the ALJ failed to assign appropriate weight to the functional assessment opinion of his treating physician, Precilla Famularcano, M.D. The record contains the following opinions from Dr. Famularcano:

1.    A June 29, 2007 office note, indicating Coen "definitely ha[d] a discogenic disk disease and is experiencing constant or chronic pain.  Fortunately, it responds to medication" (R. 338);

2.    A March 25, 2008 office note, indicating she stressed the "importance of daily adherence of medication administration" (R. 374);

3.    An April 24, 2008 office note, indicating Coen had chronic back pain caused by discogenic disk disease and finding that Coen  could not work full time, should avoid lifting, bending,

51

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

standing and sitting "for a long time" in work situations, the "[d]uration of [Coen's] inability to work full time" was indefinite, and that Coen was "at the stage that [he] can't perform customary work or employment due to the limitation he can do due to his back problem" (R. 379-79); and

3.   A March 5, 2009 office note, indicating Coen was incapable of performing any full-time job and was specifically incapable of performing any full-time work from January 2, 2007, to the date of the questionnaire. She opined that Coen was unable to work "[d]ue to pain . . . pt. experienced due to abnormality of lumbar spine" (R. 429).

After considering these records, the ALJ concluded:

> The undersigned has considered the opinion of the claimants' treating physician, Precilla Famularcano, M.D., a general practitioner, and declines to give it controlling weight (Exhibits 14F and 91F). Dr. Famularcano opined the claimant is unable to perform work activity on a full time basis due to his pain. The undersigned finds this opinion is inconsistent with the medical evidence of record, including Dr. Famularcano's examinations and physical findings, and the claimant's statements of his daily activities." (R. 26).

Pursuant to SSR 96-2p 1996 WL 374188, a treating physician's opinion that a claimant cannot work or is disabled is not entitled

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

to controlling weight if it is inconsistent with other substantial

evidence in the case. It also provides that the opinion should not

be rejected.

> Treating source medical opinions are still
> entitled to deference and must be weighed
> using all of the factors provided in 20 CFR
> 404.1527 and 416.927. In many cases, a
> treating source's medical opinion will be
> entitled to the greatest weight and should be
> adopted, even if it does not meet the test for
> controlling weight.

SSR 96-2p at *1.

In Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983), the

Fourth Circuit held that the treating physician's opinion should be

accorded great weight because "it reflects an expert judgment based

on a continuing observation of the patient's condition over a

prolonged period of time." Later, in Craig v. Chater, 76 F. 3d

585 (4th Cir. 1996), Court stated that a treating physician's

opinion "may be disregarded only if persuasive contradictory

evidence exists to rebut it." Id. at 589.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(d)(2) both provide,

> [i]f we find that a treating source's opinion
> on the issue(s) of the nature and severity of
> [the] impairment(s) is well supported by
> medically acceptable clinical and laboratory
> diagnostic techniques and is not inconsistent

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

> with the other substantial evidence in [the]
> case record, we will give it controlling
> weight.

> [4,5] By negative implication, if a
> physician's opinion is not supported by
> clinical evidence or if it is inconsistent
> with other substantial evidence, it should be
> accorded significantly less weight.

After a careful review of the evidence, the magistrate judge concluded that Dr. Famularcano's opinion was not entitled to controlling weight because 1) "it is inconsistent with the medical evidence of record;" 2) it is inconsistent with "Dr. Famularcano's examinations and physical findings;" and, 3) it is inconsistent with "the claimant's statements of his daily activities (R&R 33)."

The magistrate judge also noted that Dr. Famularcano's opinions were inconsistent with the other medical evidence of record. That evidence specifically included the following: the July 8, 2009 MRI showing "degenerative changes with diffuse disc bulges L4-5 and L5-S1" with no "disc herniation or spinal stenosis" (R&R 35 ); the August 26-31, 2009 hospital record for a rash that Coen noted while mowing grass on Saturday and Sunday with normal neurological examination (R&R 35); the September 2, 2009 office note from Dr. Whitehair reflecting complaints of swelling of joints and rash and reporting  his back pain was better (R&R 36); the

54

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

September 9, 2009 office note from Dr. Whitehair indicating Coen wanted pain medications because he had pain following working in the garden digging potatoes (R&R 36); the records from September 8 to September 23, 2009 indicating complaints of back pain but reflecting no positive Babinsky or Clonus (R&R 36); the October 5, 2009 report from Stonewall Jackson Hospital indicating Coen was seen for symptoms associated with hepatitis and stated he could no longer work as a plumber even though his strength and sensation in his bilateral upper lower extremities showed normal strength and sensation (R&R 36); the note indicating Coen experienced back pain after shoveling snow in December 2009 and was treated with narcotics (R&R 36); and the reports from January 2010 through October 2010 indicating Coen was treated for pain and symptoms associated with Hepatitis C and noting Dilaudid was "relieving pain well" (R&R 36).

As the magistrate judge noted, a review of the records from 2009 and 2010 establishes that Coen received pain medication mainly for complaints for symptoms related to hepatitis C and only for back pain after exerting himself in the garden, shoveling snow or mowing the grass or simply needing to have his pain medication refilled. The record also reveals that physical examinations during

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

this period were largely negative and contain no reports of diagnostic testing relating to claims of back pain (R&R 36).

Moreover, Coen's own account of his activities of daily living are inconsistent with his claimed disability. Coen reported his activities of daily living as doing laundry, carrying out the trash, riding a lawn mower (for short periods of time) (R. 68), cleaning (R. 39), cooking (R. 39), driving a car (R. 37, 45, 49-50), shopping once a week (R. 39, 37, 45), attending church twice a week (R. 41-42), singing at church (R. 41-42), playing a guitar and banjo (Ex. 6E), visiting with family and friends, making trips with his mother (R. 41-42), ability to walk a 1/4 mile (R. 62), ability to sit for ten or fifteen minutes before standing or lying down for thirty minutes (R. 62), ability to stand and or walk for 90 minutes of 8 hour work day (R. 61).

After the magistrate judge carefully reviewed the record, he determined that the ALJ had properly reviewed the opinions from the treating physician before deciding not to assign them controlling weight (R&R 37). The Court concurs with that conclusion.

## C. **Credibility**

Coen also contends that the ALJ improperly evaluated his credibility, contending that she failed to consider the "type

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

dosage, effectiveness and side effects of any medication" (Dkt. No. 20 at 12).

SSR 96-7p 1996 WL 374186 prohibits a disability finding based on symptoms alone. A claimant must produce "medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Id. Should evidence of such an impairment exist, the adjudicator must evaluate "the extent to which the symptoms affect the individual's ability to do basic work activities." Id. If the adjudicator is unable to make a fully favorable decision based on objective medical evidence alone, then he must determine the credibility of the claimant's own statements about symptoms. Id.

In making this determination, the adjudicator must consider the individual's statements in combination with the rest of the record, including objective evidence and information provided by health care professionals. The adjudicator, however, may not disregard the claimant's statements solely because no objective medical evidence supports them. Id.

Finally, SSR 96-7p 1996 WL 374186 requires that the adjudicator's credibility analysis be supported by reasoning and

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

evidence. It must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at 2.

In Craig v. Chater, the Fourth Circuit established a two-prong test for evaluating a claimant's subjective complaints of pain. 76 F.3d at 594. The first prong requires the ALJ to determine whether the objective evidence of record establishes the existence of a medical impairment or impairments resulting from anatomical, physiological or psychological abnormalities that could reasonably be expected to produce the pain or other symptoms alleged. Id. The second prong requires the ALJ to "expressly consider" whether a claimant has such an impairment. Id. at 596. If a claimant satisfies these two prongs, an ALJ must then evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595. In this evaluation, an ALJ must consider

> not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific

58

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

descriptions of the pain, and any medical treatment taken to alleviate it.

Id.

In this case, the ALJ determined that Coen had satisfied the two prongs of Craig, and that his medically determinable impairments could reasonably be expected to produce the symptoms alleged. However, she then found that Coen's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible.

According to the magistrate judge, the ALJ properly followed Craig's two step process and the relevant regulations (20 CFR §416.929(c) and SSR 96-7p) (R. 23-24) in his review of all the evidence of record before concluding that Coen was not entirely credible regarding his claims of debilitating pain. Those findings included that Coen a) uses a cane 75% of the time that has not been prescribed by a physician (R. 23); b) takes pain medication but has not had surgery (R. 23); and c) is able to use a riding lawn mower, drive to various activities, do laundry, sing at church, carry out the trash, attend church, play a banjo and guitar.

The magistrate judge determined that such activities were inconsistent with the ALJ's functional capacity assessment and

59

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Coen's claimed limitations (R. 23-24). Even though Coen's primary physician had noted some tenderness in the L5-S1 joints and decreased range of motion in the spine, Coen's gait was normal, muscle tone was normal, and he required no ambulatory aid (R. 24).

As part of his credibility analysis, the magistrate judge also noted that the ALJ had reviewed and considered Coen's history of substance abuse, criminal history and questionable use of prescription and non- prescription drugs. He concluded that such evidence supported the ALJ's questioning of Coen's motivation for requesting pain medication (R&R 50). The ALJ specifically had noted that, while being prescribed hydrocodone for pain, Coen had tested positive for opiates on September 26, 2007 (R. 335). Moreover, on November 30, 2007, Dr. Smith had noted that Coen "needs new PCP (primary care physician) or no other narcotics will be given" (R. 325). As well, on December 27, 2007, Coen had tested positive for opiates (R. 332, 334, 417-19), and, on March 25, 2008, Dr. Famularcano had stressed the "importance of daily adherence of medication administration" (R. 374). On October 7, 2008, December 2, 2008, and January 20, 2009, Dr. Famularcano again felt compelled to reiterate to Coen that "early refills and /or replacement of lost prescriptions may not be performed" (R. 400, 403, 406). In

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

evaluating his credibility, the ALJ also considered Coen's checkered work history, finding that his "mediocre to poor work record" (R. 395), in combination with his felony criminal background (R. 389, 390-1), made it difficult for him to find employment and therefore provided a motivation for him to seek disability.

SSR 96-7p requires an ALJ to make "a finding on the credibility of the individual's statements about symptoms and their effects." SSR 96-7p at *1. It describes the factors an ALJ must consider when making a credibility assessment in addition to the objective medical evidence including "the type, dosage, effectiveness, and side effects of any medication the individual take or has taken to alleviate pain or other symptoms." SSR 96-7p at *3. It further provides that

> Once the adjudicator has determined the extent to which the individual's symptoms limit the individual's ability to do basic work activities by making a finding on the credibility of the individual's statements, the impact of the symptoms on the individual's ability to function must be considered along with the objective medical and other evidence . . . .

Id. at *3. Thus, as the magistrate judge noted, the extent to which an individual's symptoms, including pain, diminish the individual's

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

capacity for basic work activities will be determined by the extent to which the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

Regarding Coen's claim that he suffered severe side effects from his medication, the ALJ noted: "As to the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms, the claimant was prescribed Percocet and Dilaudid (Exhibits 4F/5 and 9F/1). Side effects reported are a dry mouth, dizziness, constipation, lack of concentration and sweating (Exhibits 3E/6 and 4E/2)." During the administrative hearing the ALJ asked Coen about any side effects from his medications, to which Coen responded that he had "[d]ry mouth, loss of appetite, sleepiness, restlessness, difficulty in concentrating" (R. 56). Coen's attorney, however, failed to question Coen on how, if at all, these side effects impacted his activities of daily living or functional capacity. Significantly, there is no evidence of record establishing that the side effects of his medications impacted Coen's ability to function (R&R 52).

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

In _Hayes_, the Fourth Circuit noted that "it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion." 907 F.2d at 1456 (_quoting_ _Seacrist v. Weinberger_, 538 F.2d 597 (4th Cir. 1976). After an extensive review of the record, the magistrate judge concluded that the ALJ did not err in concluding that Coen was not completely credible. The Court agrees.

### D. Hypothetical Question to the VE

Coen's final objection attacks the hypothetical question the ALJ propounded to the VE that included an RFC for light work (Dkt. No. 10 at 11). At the  fifth step of the sequential evaluation, "the burden shifts to the [Commissioner] to produce evidence that other jobs exist in the national economy that the claimant can perform given his age, education, and work experience." _Hunter v. Sullivan_, 993 F.2d 31, 35 (4th Cir. 1992).  The ALJ is required to consider the claimant's RFC, "age, education, and past work experience to see if [he] can do other work." 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

In this analysis, the ALJ may rely on VE testimony to help determine whether other work exists in the national economy that

63

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

the claimant can perform.  20 C.F.R. §§ 404.1566(e), 416.966(e). According to the Fourth Circuit, "[t]he purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  When "questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir.1993) (citing Walker, 876 F.2d at 1100.) If the ALJ poses a hypothetical question that accurately reflects all of the claimant's limitations, the VE's response is binding on the Commissioner.  Edwards v. Bowen, 672 F. Supp. 230, 235 (E.D.N.C. 1987).  A reviewing court must consider whether the hypothetical question "could be viewed as presenting those impairments the claimant alleges." English, 10 F.3d at 1085.

Based on her analysis of all of the evidence of record, the ALJ concluded that Coen retained the residual functional capacity to perform work at the light exertion level. She then asked the VE the following hypothetical:

64

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

> If you take a hypothetical person of the
> claimant's age, education, background, and
> work experience who could do a range of light
> work with a sit/stand option.  Standing for a
> period of one hour taking five minute breaks
> as needed at the end of that period.
> Occasional posturals, no climbing of ropes,
> ladders, scaffolds, or anything of that
> nature.  Needs to avoid extreme of cold,
> vibrations, hazards such as dangerous moving
> machinery, and unprotected heights.  Needs to
> be able to ambulate reasonably, on reasonably
> level terrain or surfaces and my (sic) use a
> cane to ambulate at times.  No working in
> industries where food is used for consumption
> or in medical services or medical providers.
> Also needs an entry level unskilled job.
> Routine and repetitive work, simple
> instructions with things as opposed to people.
> Limited contact with the public, no more than
> occasionally.  And no production line work.  .
> . . Are there any occupations in the economy
> at the light or sedentary level that such a
> hypothetical person could perform? (R. 73-74).

The VE responded that such a person could do the following light
and sedentary work: laundry folder, of which there were 50,000 jobs
nationally and 650 regionally; garment maker and sorter, of which
there were 90,000 jobs nationally and 1,100 regionally; machine
tender, of which there were 141,000 jobs nationally and 1,400
regionally; and general sorter, of which there were 50,000 jobs
nationally and 550 regionally (R. 75).

COEN V. COMMISSIONER OF SOCIAL SECURITY                    1:11CV45

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

In Koonce v. Apfel, 166 F.3d 1209 (4th Cir 1999), the Fourth Circuit held that an ALJ has "great latitude in posing hypothetical questions," and need only include limitations that are supported by substantial evidence in the record. In this case, the magistrate judge concluded that the hypothetical question posed by the ALJ to the VE contained all of the limitations supported by the record. This Court agrees with that conclusion and finds no merit to Coen's objection regarding the ALJ's hypothetical question.

### IX. CONCLUSION

Upon examination of the objections, it appears that neither the Commissioner nor Coen has raised any issues that were not thoroughly considered by Magistrate Judge Kaull in his R&R. Moreover, the Court, upon an independent de novo consideration of all matters now before it, is of the opinion that the R&R accurately reflects the law applicable to the facts and circumstances before it in this action. Therefore, it **ACCEPTS** the magistrate judge's R&R in whole and **ORDERS** that this civil action be disposed of in accordance with the recommendation of the Magistrate Judge.  Accordingly,

1.   The plaintiff's motion for Summary Judgment (Docket No. 15) is **GRANTED-IN-PART**;

66

COEN V. COMMISSIONER OF SOCIAL SECURITY                     1:11CV45

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

2.   The defendant's motion for Summary Judgment (Docket No. 16) is **DENIED IN PART**;

3.   The claim is **REMANDED** to the Commissioner for consideration pursuant to the recommendations contained in the magistrate judge's Report and Recommendation; and

4.   This civil action is **DISMISSED WITH PREJUDICE** and **RETIRED** from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment order. Fed.R.Civ.P. 58.  If a petition for fees pursuant to the Equal Access to Justice Act (EAJA) is contemplated, the plaintiff is warned that, as announced in Shalala v. Schaefer, 113 S.Ct. 2625 (1993), the time for such a petition expires ninety days thereafter.

The Court directs the Clerk of Court to transmit copies of this Order to counsel of record.

DATED: September 18, 2012.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

67